# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NOS. 23-60910-CIV-ALTMAN
### 21-60048-CR-ALTMAN

**ALISA CATOGGIO**,

 *Movant*,

*v.*

**UNITED STATES OF AMERICA**,

 *Respondent*.

_____/

# <u>ORDER</u>

Our Movant, Alisa Catoggio, pled guilty to one count of conspiring to defraud the United States and to pay healthcare kickbacks. *See* Judgment, *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. Aug. 22, 2022), ECF No. 127 at 1–2. For that crime, we sentenced her to 60 months in a federal prison. *Ibid.* Catoggio has now filed a motion to vacate under 28 U.S.C. § 2255, challenging the legality of her conviction and sentence. *See generally* Motion to Vacate (the "Motion") [ECF No. 1]. Rule 4(b) of the Rules Governing Section 2255 Cases authorizes us to summarily deny a § 2255 motion, even without a response from the Government, "if it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (cleaned up). For two reasons, that's what we have here. *First*, Catoggio has procedurally defaulted all four of her claims because she never appealed her conviction and sentence to the Eleventh Circuit. *Second*—and in any event—*none* of Catoggio's claims is cognizable in a § 2255 proceeding. We therefore summarily **DISMISS** her Motion.

## THE FACTS

A grand jury in this District charged Catoggio—along with her co-conspirator (and former boss) Matthew Smith—with seven separate crimes: one count of conspiracy to commit healthcare and wire fraud (Count 1); one count of conspiracy to defraud the United States and to pay healthcare kickbacks (Count 2); and five counts of paying kickbacks in connection with a federal healthcare program (Counts 3–7). *See* Indictment, *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. Feb. 16, 2021), ECF No. 1. Catoggio worked as Smith's executive assistant at Diabetic Care Rx, LLC d/b/a Patient Care America ("PCA"), a pharmacy "that purported to prepare and dispense prescription drugs" in Broward County, Florida. *Id.* at 3. At her change-of-plea hearing, Catoggio admitted (under oath) that, "had this case gone to trial, the Government would have proved . . . beyond a reasonable doubt" the following:

> In the summer of 2014, Defendant was hired to be the lead pharmacy technician, and later promoted to Executive Assistant to Senior VP Matt Smith, at [PCA]. During the conspiracy, co-conspirators negotiated agreements with independent contractor "sales reps" through which PCA agreed to pay for each compound prescription the sales reps referred to PCA. The sales reps would typically receive 45% to 65% of the insurance reimbursements for each prescription referral, minus a minimal cost of goods sold. The vast majority of referred prescriptions involved Tricare beneficiaries. In addition, to induce patients to order the drugs because they were marketed as "free" or "no cost" to the beneficiary, PCA failed to collect mandatory co-payments and/or paid the co-payments through sham charities. As set forth in PCA's own corporate compliance documents—signed by Defendant at the beginning of her employment— the above activities constituted illegal kickback arrangements under Federal law.

> As one way to conceal the true source of the scripts, Defendant and others used "white out" to remove fax headers and phone numbers from the prescriptions. Later, PCA used sham contracts to conceal the true nature of the referral agreements. These sham contracts described a fictitious payment system whereby sales reps were purportedly paid an hourly wage based on various types of marketing activities (untethered to the volume or value of the patient referrals), when in fact the sales reps continued to receive a large percentage of the insurance reimbursements for each referral. Defendant maintained an electronic "contracts spreadsheet" to track the true compensation system. Defendant calculated the kickbacks owing to each sales rep at regular intervals throughout the scheme. . . . In addition, Defendant tracked the co-payment amounts owed from certain sales reps who agreed to pay their patients' co-pays through a sham charity. In all, PCA failed to collect over $225,000 in required co-payments.

Throughout the conspiracy, Defendant and others at PCA received numerous complaints from patients that the patients: (1) had never spoken to a doctor, (2) were offered payment for ordering the drugs, and (3) were told they had no co-pay. In all, PCA paid approximately $40 million in kickbacks to the sales reps for the referral of Tricare and CHAMPVA patients.

Factual Proffer, *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. May 17, 2022), ECF No. 82 at 2–3.

In exchange for her guilty plea to Count 2, the Government agreed to "dismiss the remaining counts as to this defendant after sentencing." Plea Agreement, *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. May 17, 2022), ECF No. 81 at 1. Crucially, as part of the plea agreement, Catoggio acceded to the following appellate waiver:

> The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the conviction and sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by this Office in this plea agreement, the defendant thereby waives all rights conferred by Section 3742 *to appeal the conviction and any sentence imposed, including any restitution or forfeiture order, or to appeal the manner in which the sentence was imposed*, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure or an upward variance from the guidelines as calculated by the Court. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the government appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that she has discussed the appeal waiver set forth in this agreement with her attorney. The defendant further agrees, together with this Office, to request that the district Court enter a specific finding that the defendant's waiver of her right to appeal the sentence to be imposed in this case was knowing and voluntary.

*Id.* at 5 (emphasis added).

We accepted Catoggio's guilty plea, adjudicated her guilty of Count 2, and (a couple months later) sentenced her to 60 months in prison and ordered her to pay $75,106,971.83 in restitution. *See* Judgment, *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. Aug. 22, 2022), ECF No. 127 at 1–2, 6. Consistent with her appellate waiver, Catoggio didn't appeal her conviction or sentence. *See generally* Docket.

3

THE LAW

Because collateral review isn't a substitute for a direct appeal, a movant can proceed under §
2255 only in extremely limited circumstances. As relevant here, a prisoner is entitled to relief under
§ 2255 if (1) "the sentence was imposed in violation of the Constitution or laws of the United States,"
(2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of
the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." 28
U.S.C. § 2255(a); *accord McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). In other
words, "relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow
compass of other injuries that could not have been raised on direct appeal and would, if condoned,
result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)
(cleaned up); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently
affirmed that a collateral challenge will not do service for an appeal.").

If a court grants a § 2255 claim, the court "shall vacate and set aside the judgment and shall
discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear
appropriate." 28 U.S.C. § 2255(b). The movant bears the burden of proving his § 2255 claim. *See
Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("We rest our conclusion that a § 2255
movant must prove his [claim] on a long line of authority holding that a § 2255 movant bears the
burden to prove the claims in his § 2255 motion." (cleaned up)), *cert. denied*, 139 S. Ct. 1168 (2019).

ANALYSIS

In her Motion, Catoggio advances four grounds for relief. *First*, she argues that the Mandatory
Victim Restitution Act ("MVRA") doesn't apply to her case because the task of identifying the victims
of her conspiracy would be "impracticable." Motion at 4 ("The MVRA is clear that restitution can
only be imposed to the extent that victims of a crime are actually identified."). *Second*, Catoggio insists
that Tricare and CHAMPVA—the federal agencies she and Smith defrauded—can't be "victims"

4

under the MVRA because they aren't "persons." *Id.* at 5. *Third*, Catoggio says that "pharmacy field [and] pharmacy billing is beyond the expertise/scope of the prosecution" and that "there was not a pharmacy consultant on this case." *Id.* at 7. We aren't quite sure what Catoggio means here, but we assume she's alleging that her prosecution was somehow illegal because the Government needed a "pharmacy consultant" to adequately investigate her case.[1] *Fourth*, Catoggio asserts that, because she had "no ownership in the pharmacy," we erred in ordering her to pay restitution and in applying a 22-point enhancement to her offense level. *Id.* at 8; *see also* Presentence Investigation Report ("PSI"), *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. May 17, 2022), ECF No. 117 ¶ 67 (applying a 22-point enhancement based on "the greater value of the bribe or the improper benefit to be conferred attributable to the defendant" under §§ 2B4.1(b)(1)(B) & 2B1.1(b)(1)(L)).

We don't need to reach the merits of Catoggio's claims, though, because she failed to raise any of them on direct appeal. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). To overcome this "procedural default," Catoggio must show either: (1) "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error," or (2) "that it is more likely than not that no reasonable juror would have found [Catoggio] guilty beyond a reasonable doubt in light of [new] evidence of innocence." *McKay*, 657 F.3d at 1196 (cleaned up). Catoggio never points us to some "cause" that might have prevented her from raising these claims on

---

[1] We've taken our best shot at deciphering Ground Three, but we aren't going to bend over backwards to figure out every possible argument Catoggio *could* be making in this vague and conclusory claim. It was, after all, *her* burden to "establish [her] right to habeas relief and [to] prove all facts necessary to show a constitutional violation," *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008), so we won't "fill in the blanks to infer a claim" she failed to advance, *McDowell v. Gonzalez*, 424 F. Supp. 3d 1214, 1221 (S.D. Fla. 2019) (Bloom, J.); *see also GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." (cleaned up)).

direct appeal, nor does she claim to be innocent of the crime she knowingly and voluntarily pled guilty to. *See generally* Motion. And, of course, Catoggio bears the burden of showing that one of these procedural-default exceptions applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)). Since she's unambiguously failed to meet that burden, we must dismiss her claims as procedurally defaulted.

The appellate waiver (it's true) did preclude Catoggio from "appeal[ing] the conviction and any sentence imposed, including any restitution or forfeiture order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure or upward variance from the guidelines as calculated by the Court." Plea Agreement, *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. May 17, 2022), ECF No. 81 at 5. Although this *sounds* like it might constitute "cause" for Catoggio's failure to file a direct appeal, it really isn't. As one of our colleagues recently explained, "[p]erceived futility in failing to raise an issue on direct appeal because of [an] appellate waiver does not constitute cause for not doing so." *Lubin v. United States*, 2023 WL 3204052, at *2 n.6 (S.D. Fla. Feb. 9, 2023) (Middlebrooks, J.) (citing *Kerr v. United States*, 463 F. App'x 812, 813 (11th Cir. 2012)); *see also United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995) ("Galina cites [his appellate waiver] as constituting 'cause' for his failure to appeal that justifies his subsequent § 2255 application. In our view, this position turns the 'cause' requirement on its head. Whatever linguistic distinction may be made between an 'appeal' and a § 2255 petition, we are loathe to countenance so obvious a circumvention of a plea agreement."); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993) ("While we do not hold that Abarca's [appellate] waiver categorically forecloses him from bringing any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver, the question of the degree of his culpability is an

issue clearly contemplated by, and subject to, his plea agreement waiver. (cleaned up)); *Ware v. United States*, 2009 WL 2567023, at *8 (S.D. Fla. May 14, 2009) (Cohn, J.) ("Accordingly, because Movant chose to waive his appellate rights, he cannot establish that a factor external to the defense and not attributable to his own conduct precluded his obtaining appellate review, and he therefore is unable to establish adequate 'cause' to excuse his procedural default."). So, even if Catoggio *had* blamed her failure to appeal on her appellate waiver (which she doesn't), that waiver wouldn't excuse her procedural default anyway.[2]

---

[2] Catoggio also doesn't contest the validity or scope of the appellate waiver. *See generally* Motion. Nor could she. The Eleventh Circuit has repeatedly held that an appellate waiver is valid and enforceable if "(1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *see also King v. United States*, 41 F.4th 1363, 1367 (11th Cir. 2022) (holding that a valid appellate waiver can only be ignored if there's "a jurisdictional defect," if the sentence was "based on a constitutionally impermissible factor such as race," if the "sentence [was] imposed in excess of the maximum penalty provided by statute," or in "extreme circumstances" such as where the sentencing court ordered a "public flogging"). We took great care to ensure that Catoggio understood the rights she was giving up by agreeing to the appellate waiver, and Catoggio confirmed—under oath—that she understood and was willing to accept the appellate waiver as a condition of her guilty plea:

> The Court: But [the plea agreement is] also saying that in exchange for the things the government is promising you in this plea agreement, that you're going to give up— that means you're going to waive forever—your right to appeal the sentence that I impose or the manner in which I impose it. Do you understand that?
>
> The Defendant: Yes, sir.
>
> [. . . .]
>
> The Court: Are you waiving your appellate rights of your own free will in exchange for the things the government is giving you in this plea agreement because you think that's the best thing to do for you in your case?
>
> The Defendant: Yes, sir.
>
> The Court: I find that the defendant's waiver of her appellate rights is knowing, intelligent[,] and voluntary; and that it isn't the result of force, or threats or coercion, or inappropriate promises, representations, or guarantees, but that it was done after adequate consultation with competent and effective counsel[.]

But, even if Catoggio's claims weren't all procedurally defaulted, she'd still run into a separate problem: "'[G]arden-variety' sentencing error[s] cannot be corrected on collateral review." *Biggs v. United States*, 2021 WL 6062726, at *4 (S.D. Fla. Dec. 22, 2021) (Gayles, J.) (citing *Spencer v. United States*, 773 F.3d 1132, 1139–40 (11th Cir. 2014) (en banc)). As the Eleventh Circuit has cogently explained, "Section 2255 does not provide a remedy for every alleged error in conviction and sentencing. . . . [A] district court lacks the authority to review the alleged [sentencing] error 'unless the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Spencer*, 773 F.3d at 1138 (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). A "complete miscarriage of justice" arises in just three circumstances: (1) where the defendant is sentenced above the statutory maximum; (2) where the defendant is "actually innocent"; or (3) where a prior conviction that had been used to enhance the defendant's sentence has since been vacated. *See id.* at 1139 ("When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice.").

Three of Catoggio's four grounds for relief challenge *either* specific enhancements under the U.S. Sentencing Guidelines *or* the amount of restitution we imposed. *See* Motion at 4–8. These alleged errors do *not* constitute "fundamental defects" in Catoggio's sentence, so she can't challenge them on collateral review—even if they weren't procedurally defaulted. *See Spencer*, 773 F.3d at 1140 ("But any miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory. If the district court were to resentence [Catoggio], the district court could impose the same sentence again."); *Dohrmann v. United States*, 442 F.3d 1279, 1280–81 (11th Cir. 2006) ("[Section

---

Change of Plea Hr'g Tr., *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. June 19, 2023), ECF No. 147 at 22–23.

2255] may not be utilized by a person in federal custody to attack only the restitution portion of his sentence. . . . Moreover, we have held that a petitioner who failed to contest a restitution order either at sentencing or on direct appeal cannot for the first time challenge the district court's initial restitution calculation in a collateral proceeding, absent exceptional circumstances."). At the end of the day, Catoggio received a 60-month sentence for conspiring to defraud the United States. *See* Judgment, *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. Aug. 22, 2022), ECF No. 127 at 1–2, 6. And the statutory maximum for this offense is also five years. *See* 18 U.S.C. § 371. In short, Catoggio cannot challenge her sentence with a § 2255 motion because (1) she's not actually innocent of the crime, (2) she wasn't sentenced above the statutory maximum, and (3) her sentence wasn't enhanced by a now-vacated conviction. *See Spencer*, 773 F.3d at 1139.

The only thing left to settle is Catoggio's bizarre argument in Ground Three that her prosecution was somehow infirm because "there was not a pharmacy consultant on this case." Motion at 7. But we needn't delve deeply into this claim because, by pleading guilty, Catoggio "waive[d] all nonjurisdictional challenges to the constitutionality of [her] conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citing *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Unit B 1981)). Catoggio doesn't dispute that she knowingly and voluntarily pled guilty, *see generally* Motion, and she conceded at her change-of-plea hearing that her guilty plea wasn't induced by force, threats, or coercion, *see* Change of Plea Hr'g Tr., *United States v. Catoggio*, No. 21-60048-CR-2-ALTMAN (S.D. Fla. June 19, 2023), ECF No. 147 at 24–25 ("The Court: Paragraph 17 [of the plea agreement] says that you agree that no one's threatened or coerced you in any way in order to plead guilty in this case. Is that true? The Defendant: Yes. The Court: It also says that . . . nobody's made you any promises, representations or guarantees of any kind in order to get you to plead guilty in this case. Is that also true? The Defendant: Yes. The Court: As you pleading guilty of your own free will because you are in fact guilty?

The Defendant: Yes."); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Ground Three is thus not cognizable on collateral review.

*       *       *

In short, Catoggio cannot advance any of her claims in this § 2255 motion. Because Catoggio failed to appeal her conviction and sentence, her four grounds for relief have been procedurally defaulted. Even if they weren't, Grounds One, Two, and Four aren't cognizable on collateral review because they allege only "garden-variety" sentencing errors. And Ground Three isn't cognizable under § 2255 either because Catoggio waived all "nonjurisdictional challenges" to her conviction when she pled guilty. We thus summarily **DISMISS** all four of Catoggio's claims.

## EVIDENTIARY HEARING

Because Catoggio's § 2255 claims fail as a matter of law, we see no need to hold an evidentiary hearing in this case. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d

1196, 1199 (11th Cir. 2000)). Jurists of reason wouldn't debate our finding that Catoggio's claims have been procedurally defaulted, nor would they second-guess our assessment that Catoggio's grounds for relief aren't cognizable on collateral review. We therefore won't issue a COA.

*      *      *

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Motion [ECF No. 1] is **DISMISSED**. Any request for a COA is **DENIED**. Any pending motions, including any requests for an evidentiary hearing, are **DENIED**. All deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on June 23, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Alisa Catoggio, *pro se*